## PACIFIC EMPLOYERS INS. CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 6768.   Decided April 17, 1945.   (157 P. 2d 800.)

See 71, C. J., Workmen's Compensation, sec. 647; 28 R. C. L., 737.

*Charles Welch, Jr.,* of Salt Lake City, for plaintiffs.

*Grover A. Giles, Atty. Gen.,* and *F. A. Trottier,* of Salt Lake City, for defendants.

TURNER, Justice.

Certiorari to the Industrial Commission to review an award of compensation to John Deza who became totally disabled to work on March 25, 1944, after contracting silico-tuberculosis, within the meaning of the Occupational Disease Disability Compensation Act (Sec. 42-1a-1 et seq., U. C. A. 1943), which act took effect July 1, 1941. The facts,

established without dispute in the record, are that Deza for 27½ years during the period from 1914 to March, 1944, was employed by the National Tunnel & Mines Company and its predecessor in interest, Utah-Apex Mining Company. Continuous employment by the mining companies named as an actual underground miner up to June 7, 1943, was interrupted by approximately 2½ years' employment from 1920 to 1923 by the Park-Utah Mines at Park City, Utah, and the Utah Copper Mining Company at Bingham, Utah. Testimony of Dr. Paul S. Richards, one of the applicant's several attending physicians, shows that the first record on the applicant dates back to 1932; that the first positive diagnosis of silicosis was made March 10, 1937, on clinical findings, and the first positive X-ray findings were made December 28, 1939, resulting in a diagnosis of silico-tuberculosis. Applicant's progressive condition, shown by these diagnoses, did not result in actual disability to perform his work except an occasional lay-off on account of sickness. On advice from the doctor, however, Deza left underground mining on June 7, 1943, and remained in the Company's employ as a watchman above the ground from then until March 25, 1944, on which date he definitely ceased working and was later confined as a continued bed patient in the hospital. On April 20, 1944, stereoscopic X-rays were again taken when a confirmed diagnosis of silico-tuberculosis was made and from an X-ray standpoint the tuberculosis was considered as active. The first positive sputum was found on May 19, 1944.

From the foregoing statement of facts, it is seen that the last actual exposure to silicon dioxide dust was June 7, 1943. The significant importance of this date will become apparent immediately. Prior to July 1, 1943, the workmen's compensation and occupational disease insurance was carried by the National Tunnel & Mines Company with the State Insurance Fund. On and after July 1, 1943, the Mines Company insurance carrier was the Pacific Employers Insurance

Company for liability under both acts, and by Provision VII of its policy of insurance it was provided that

"This agreement shall apply only to such injuries so sustained by reason of accidents occurring during the Policy Period limited and defined as such in Item 2 of said Declarations."

Item 2 of the Declaration sets out that the policy period "shall be from July 1, 1943, to July 1, 1944."

We here quote a few pertinent provisions of the statute (U. C. A. 1943):

### Sec. 42-1a-29. Silicosis—Defined.

"For the purpose of this act 'silicosis' is defined as a chronic disease of the lungs caused by the prolonged inhalation of silicon dioxide dust ($SiO_2$) characterized by small discrete nodules of fibrous tissue similarly disseminated throughout both lungs, causing a characteristic X-ray pattern, and by variable clinical manifestations."

### Sec. 42-1a-12:

"The following terms as used in this act shall be construed as follows:

"(a) 'Disablement' means the event of becoming physically incapacitated by reason of an occupational disease as defined in this act from performing any work for remuneration or profit. *Silicosis, as defined in this act, when complicated by active pulmonary tuberculosis, shall be presumed to be total disablement.* 'Disability,' 'disabled,' 'total disability' or 'totally disabled' shall be synonymous with 'disablement.'"

### Sec. 42-1a-14:

"Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, *provided that in the case of silicosis the only employer liable shall be the employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide ($SiO_2$) dust during a period of sixty days or more after the effective date of this act.*"

### Sec. 42-1a-13:

"(a) There is imposed upon every employer a liability for the payment of compensation to every employee who becomes totally dis-

abled by reason of an occupational disease subject to the following conditions: * * *

"(3) No compensation shall be paid in case of silicosis unless during the ten years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide ($SiO_2$) dust for a total period of not less than five years in this state and unless total disability results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed."

Sec. 42-1a-49:

"The right to compensation under this act for disability or death from an occupational disease shall be forever barred unless written claim is filed with the commission within the time as in this section hereinafter provided:

"(a) If the claim is made by an employee and based upon silicosis it must be filed within one year after the cause of action arises. * * *"

On May 22, 1944, Deza filed application with the Commission setting forth the nature of his total disability and its cause as hereinbefore stated. Upon this application and the answer of the Pacific Employers Insurance Company denying liability, and after the State Insurance Fund was made a party to the proceeding, the case was duly heard before the Commission and a decision was made and filed July 11, 1944. In its decision, the Commission found the facts to be substantially as set out at the beginning of this opinion, and held the National Tunnel & Mines Company and the Pacific Employers Insurance Company liable for the statutory compensation, hospital and medical expense, and dismissed the application as against the State Insurance Fund.

In the course of its decision, the Commission holds:

"We cannot give any weight to the argument of defendant, Pacific Employers Insurance Company that applicant was not exposed to harmful quantities of free silicon dioxide dust since July 1, 1943, the date when Pacific Employers Insurance Company became the insurance carrier. We think the record shows conclusively that ap-

plicant was exposed to harmful quantities of free silicon dioxide dust for not less than five years out of the last ten years immediately preceding his disablement, and that he was likewise exposed for more than sixty days since the effective date of the act, July 1, 1941. If this is true, then regardless of the fact that the disability occurred after Pacific Employers Insurance Company became the insurance carrier, the same employer is involved throughout the entire period from 1934 to March 25, 1944, *and therefore the question of insurance carrier is immaterial.* The National Tunnel and Mines Company was the first and last employer so far as we are concerned; and since the claim of applicant was filed well within the time specified by the statute of limitations the employer is unquestionably liable, and the insurance carrier which happens to be the insurer at the time the total disability occurs must assume liability, although the exposure occurred prior to the effective date of the policy, and although the disease which finally caused total disablement existed prior to the date of the said policy." (Italics added.)

The Commission's findings and award of compensation in favor of Deza against the National Tunnel & Mines Company as employer are amply supported by the record and there can be no dispute as to this portion of the Commission's decision. The questions raised with merit in this court on review relate solely to whether the Pacific Employers Insurance Company or the State Insurance Fund is liable as insurance carrier under the peculiar facts of this case.

It is our opinion that the Commission erred in holding the Pacific Employers Insurance Company liable. It is true that the applicant's total disability did not occur until March 25, 1944, but the cause of his ultimate disability had been in operation for many years prior to that date. The statute plainly provides

"that in the case of silicosis the only employer liable shall be the employer in whose employment *the employee was last exposed to harmful quantities of silicon dioxide* ($SiO_2$) *dust* during a period of sixty days or more after the effective date of this act [July 1, 1941]."

Under the facts, the statutory requirements were all clearly met and render the National Tunnel & Mines Company

128

liable as such last employer. As has been pointed out, however, June 7, 1943, was the date of the last exposure of the applicant to harmful quantities of silicon dioxide dust, and from that date until his employment ceased because of total disability on March 25, 1944, he continued in the employ of the Mines Company but in the capacity of a watchman above ground on the property of the Company. The insurance carrier at the time of such last exposure was the State Insurance Fund; this is the date which fixes the liability of the employer, and consequently also attaches the liability to the employer's insurance carrier as of that date; and upon the whole record and from the clear wording of the statute, the decision of the Commission should have held the State Insurance Fund liable for the payment of the compensation awarded.

Many cases are cited by both parties, none directly in point but many helpful in principle, and we deem it only necessary in support of our decision to quote the following from *Case of Anderson,* 288 Mass. 96, 192 N. E. 520, 521, cited in plaintiff's brief:

"The fact that the employee continued to work for a short time after the cause of his incapacity became complete did not as matter of law require a finding that his injury did not occur until, because of incapacity, he ceased working. Personal injury and incapacity for work are not equivalent terms and incapacity for work which is the final result of injury does not necessarily begin when the injury occurs. *Case of Carroll,* 225 Mass. 203, 207, 114 N. E. 285. Cases in which it has been held that the board was warranted in taking the date incapacity began as the date of the injury are cases where there was no finding of the exact date of the injury (*Atamian's Case,* 265 Mass. 12, 16, 163 N. E. 194) or where there was evidence that the cause of the injury was cumulative, as here, and, furthermore, that the employment continued to be a contributing cause of such injury up to the date incapacity began. See *In re Johnson,* 217 Mass. 388, 104 N. E. 735; *Case of Bergeron,* 243 Mass. 366, 137 N. E. 739; *Case of Johnson,* 279 Mass. 481, 181 N. E. 761. *Where, in the case of a cumulative cause of injury there has been a change of insurer, it has been deemed essential that the employee, in order to establish the liability of the later insurer to pay compensation, prove the existence of a causal relation between the*

*employment during the period covered by its policy and the employee's injury. Case of Fabrizio, 274 Mass. 352, 174 N. E. 720; Case of Langford, 278 Mass. 461, 463, 180 N. E. 228; Case of De Filippo, 284 Mass. 531, 534, [188 N. E. 245.] The implication is that where no such causal relation exists the employee's injury which results in his incapacity is to be regarded as having occurred prior to that period and not at the date incapacity began."* (Italics added.)

Applying this reasoning to the instant case, it cannot be said that there was any causal relation between applicant's disability due to silico-tuberculosis and his employment during the policy period of the Pacific Employers Insurance Company as insurance carrier.

The award of the Commission as against the employer, National Tunnel & Mines Company, is affirmed; and as against the Pacific Employers Insurance Company the award is annulled.

LARSON, C. J., and McDONOUGH and WADE, JJ.

WOLFE, Justice.

I concur. I desire, however, to refer to the case of *Continental Casualty Company* v. *Industrial Commission,* 63 Utah 59, 221 P. 852. The case involved a dispute between two insurance companies as to which of them should pay a compensation award entered by the Industrial Commission. The facts showed that one Sabey, while employed by Royal Coal Company, was injured on July 18, 1922. The insurance carrier for the employer at the time of this injury was the Aetna Life Insurance Company. While still employed by Royal Coal Company on December 4, 1922, the employee, Sabey, was again disabled. At the date of the December disability the employer's insurance carrier was the Continental Casualty Company. Upon the record made we concluded that the December disability was a recurrence of the July injury. The commission had ordered the Continental Casualty Company, the insurance carrier at the time of last disability, to pay the award. We reversed the holding that

the Commission exceeded its authority in so ordering, even though the same employer was primarily liable for both disabilities.

While this case is not directly in point, it does hold that in workmen's compensation cases, it is the insurance carrier at the time of the accidental injury which must pay the award even though said carrier did not carry the insurance at the time of the disability. This is partly analogous to our holding that the insurance carrier at the time of the last exposure must pay the award even though it is not the carrier at the time of the disability.