While plaintiff has contracted the occupational disease of asbestosis, I must respectfully dissent from the majority decision to order removal and pay 104 weeks of benefits pursuant to N.C. GEN. STAT § 97-61.5(b). Contrary to the express language of the statute, the majority finds that an order of removal and the award of 104 weeks of benefits are warranted based solely on one fact alone: that plaintiff has asbestosis. This, however, is not the law.
 NECESSARY ELEMENTS FOR ORDER OF REMOVAL/104 WEEKS
Removal from employment under § 97-61.5, requires a finding of at least two conditions: (1) that the plaintiff has a compensable claim for asbestosis; and (2) that plaintiff is currently employed in a position that causes harmful exposure to asbestos. See Austin v. ContinentalGeneral Tire, 141 N.C. App. 397, 415, 540 S.E.2d 824, 835 (2000) (J. Greene, dissenting), reversed and adopting dissenting opinion,354 N.C. 344, 553 S.E.2d 680 (2001); Moore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996). On the issue of removal, §97-61.5(b) specifically provides:
 "If the Industrial Commission finds at the first hearing that the employee has asbestosis or if the parties enter into an agreement to the fact that the employee has asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis"
[Emphasis added] Plaintiff has met the first condition for removal through the agreement of the parties and the evidence that he has asbestosis. Plaintiff, however, has not met the second condition, and indeed has presented no evidence to prove that his occupation currently
"exposes him to the hazards of asbestosis." Thus, plaintiff has not established that he is entitled to an order of removal. Further, only an appropriate order of removal triggers the payment of 104 weeks of benefits. See Austin, 141 N.C. App. at 415; Moore, supra.
The application of the statutory provision regarding removal and subsequent payment of 104 weeks has a practical purpose and historical significance. By way of an explanation, employees in a dusty trade are entitled to a dusty trade card only after passing a chest x-ray examination, and for as long as their yearly chest x-rays remain clear. Upon a finding of asbestosis after clinical examination (the first panel examination), the employee's dusty trade card is revoked, prohibiting his continued employment in the dusty trade industry. The diagnosis of asbestosis and evidence of current hazardous exposure to asbestos thereby trigger an order of removal and the second and third panel examinations during which time the 104 weeks of benefits is paid. The length of the 104-week period is significant in the statutory scheme of the panel examinations. A 52-week period exists between the first and second panel examinations and another 52-week period exists between the second and third panel examinations. This accounts for the 104 weeks of benefits which are provided as a "safety net" for an employee who is suddenly prohibited from further employment in the dusty trade industry where the employee is currently hazardously exposed and whose final disability determination will not be made until after the third panel examination. Although § 97-61.5 has now been extended by the courts to non-dusty trade employment, the same principles apply. The 104 weeks of benefits is intended to compensate the employee who suddenly is prohibited from continuing in his current employment because it exposes him to the hazards of asbestos. Thus, evidence of plaintiff's current exposure to the hazards of asbestos is a critical element to be established prior to an order of removal and payment of 104 weeks of benefits.
Plaintiff has the burden of proof on the issue of current exposure to the hazards of asbestos. While plaintiff is not required to provide scientific proof of his current exposure to asbestos for purposes of § 97-61.5(b), nevertheless he must prove current exposure by the greater weight of the competent evidence. See Austin, 141 N.C. App. at 404. The Austin Court did not hold, as plaintiff suggests in this case, that plaintiff is entitled to removal without establishing that he iscurrently exposed to the hazards of asbestos. Further, § 97-61.5(b) compels removal from "hazardous exposure" to asbestos, not merely because a facility may have asbestos present, but because asbestos is present in such a form as it can be inhaled, i.e. friable. Asbestos that is non-friable, encapsulated, or in other form such that it would not be inhaled and therefore not cause or contribute to asbestosis is not, while in that form, a "hazardous" exposure. Thus, plaintiff must present evidence that there is asbestos in the facility that currently presents a hazardous exposure to him while working. See Austin,141 N.C. App. at 415.
Plaintiff has not presented any evidence that his employment with defendant currently exposes him to the hazards of asbestos. No testimony was presented at the deputy commissioner hearing, let alone any evidence to support the conclusion that plaintiff's current employment exposes him to the hazards of asbestos. The majority finds in Finding of Fact No. 4, "plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1957 to present." However, there is no evidence, stipulation, or reasonable inference[1] to support the finding that plaintiff is currently, hazardously exposed to asbestos. The parties stipulated that plaintiff was employed by defendant from 1957 to present. The parties also stipulated that plaintiff was last injuriously exposed (30 work days inside of seven consecutive months) to asbestos while employed by defendant. These stipulations taken together, however, do not support the majority's finding and conclusion that plaintiff was hazardously exposed "through the present." The stipulations do not define when during the forty-some years of employment plaintiff was last exposed to the hazards of asbestos and more significantly do not state that plaintiff is currently exposed to the hazards of asbestos. Thus, there is no evidence to support an essential element of plaintiff's claim.
 PLAINTIFF'S § 97-57 ARGUMENT IS MISPLACED
Rather than presenting evidence of current exposure to the hazards of asbestos in his employment, plaintiff suggests that the stipulation, made pursuant to § 97-57, that plaintiff was exposed to asbestos for 30 days within a seven-month period,[2] presents an irrebuttable presumption that plaintiff was exposed to asbestos in the last 30 days of his employment. Plaintiff's reliance on § 97-57 to determine current
exposure is misplaced because § 97-57 is not applicable for determining current exposure. Section 97-57 determines liability for "last injurious exposure" when there is a series of defendants, all of whom are potentially liable because their employment caused plaintiff to be exposed to the hazards of asbestos. Defendant's stipulation to "last injurious exposure" merely indicates that, should plaintiff successfully establish a compensable claim for § 97-61.5(b) benefits, then defendant is the liable employer. Section 97-57 does not abrogate plaintiff's burden to prove the elements of his case, including but not limited to, the elements for removal and the award of 104 weeks under § 97-61.5(b).
Plaintiff's argument arises from a misinterpretation of the Court of Appeals' decision in Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991) and the North Carolina Supreme Court's decision in Fetner v. Rocky Mount Marble Granite Works,251 N.C. 296, 111 S.E.2d 324 (1959). Both of these cases deal with the issue of "last injurious exposure" for purposes of determining the particular defendant liable for benefits. Plaintiff misapplies § 97-57
to abrogate plaintiff's burden of proof with regard to current exposure when § 97-57 is only applicable after plaintiff has carried all of the threshold burdens of proof for compensability of his disease. Section97-57, in and of itself, does not remove plaintiff's burden to prove a necessary element of his § 97-61.5(b) claim; i.e.: current exposure to the hazards of asbestos. Furthermore, as these cases dealt with dusty trade defendants whose facilities continued to cause current exposure, whether there was "current exposure" was not an issue in controversy and therefore not a litigated issue in these cases.
Plaintiff has misinterpreted the Barber decision. Plaintiff, out of context, quotes Barber to find that § 97-57 "creates an irrebuttable legal presumption that the last 30 days of work is a period of last injurious exposure." See Barber 101 N.C. App. at 565. The issue inBarber was whether plaintiff who was only employed for forty-eight days at the second of two employers nevertheless had to establish that his exposure to asbestos was "injurious." The Court of Appeals correctly applied § 97-57 and explained "[i]n light of the irrebuttable legal presumption that the last 30 days of work subjecting the plaintiff to the hazards of asbestos is the period of last injurious exposure and the Commission's holding that plaintiff was exposed to the inhalation during the forty-eight days he worked for the defendant, such exposure must be deemed injurious." Id. at 566 [emphasis added]. However, contrary to plaintiff's argument in the instant case, the Court of Appeals in Barber
did not find that a plaintiff did not have to establish current exposure to asbestos for purposes of removal; rather, the Court of Appeals explained that the plaintiff did not have to prove that his exposure to asbestos was "injurious" because § 97-57 creates a presumption that 30 days of exposure within seven months is "injurious." Id. at 566. Further, the Court in Barber did not find evidence of exposure in the last 30 days of employment based on a presumption. In fact, the Barber
court had evidence of record to determine that plaintiff was exposed to asbestos during the forty-eight days that he worked for defendant. Id.
Similarly, the Supreme Court's decision in Fetner does not support plaintiff's argument that a stipulation of "last injurious exposure" is equivalent to a stipulation of current exposure. See Fetner v. RockyMount Marble Granite Works, 251 N.C. 296, 111 S.E.2d 324 (1959). InFetner, a dusty trades case, the issue was whether the exposure with a third employer for whom plaintiff only worked for eleven months was "injurious" when plaintiff was diagnosed with silicosis before he went to work for the third employer. In this case, plaintiff was diagnosed with silicosis on March 4, 1949, when he was working for the first employer, and his dusty trade card was revoked after his diagnosis. On August 10, 1950, plaintiff requested permission from the Industrial Commission to waive compensation and to go to work for the second employer. Plaintiff worked for the second employer from July 26, 1950 to October 19, 1950. Plaintiff then went to work for a third employer from November 4, 1950 to September 29, 1951. No waiver of compensation was sought for plaintiff's employment with the third employer, thereby raising the issue of whether the eleven-month employment with the third employer was "injurious" in light of the prior diagnosis of silicosis and prior revocation of plaintiff's dusty trade card based on that diagnosis. In examining the liability of the third employer, the Supreme Court held that the Commission may not arbitrarily select any thirty-day period of employment, but must select the last 30 days within a seven-month period during which the plaintiff was last exposed, as the period of "last injurious exposure." Fetner, 251 N.C. at 301. Moreover, the Supreme Court did not relieve plaintiff of the burden to present evidence on the period of hazardous exposure. Id. Competent evidence was presented and findings were made to determine when plaintiff was last exposed to the hazards of silica.
Contrary to the suggestion of plaintiff, the Fetner and Barber
decisions do not abrogate the requirement of plaintiff to establish by the greater weight of the competent evidence the period of hazardous exposure. Rather, these decisions hold that § 97-57 creates for purposes of liability among two or more defendants, where plaintiff proved hazardous exposure, an irrebuttable presumption that exposure for at least 30 days during a seven-month period is an "injurious exposure." In light of the stipulation of the parties and the lack of evidence of other hazardous employment, this issue is not present in this case; the defendant has stipulated that plaintiff's "injurious exposure" occurred during his employment with defendant.
Further, the plaintiff's illogical argument that the last thirty days of employment was injurious, without producing evidence of exposure to any asbestos during this thirty-day period, directly violates the Supreme Court's holding in Fetner that the Commission may "not arbitrarily select any thirty days of employment." Fetner, 251 N.C. at 300,111 S.E.2d at 327. The relevant period under § 97-57 is the "last thirty days of employment while exposed to silica [asbestos] dust." Fetner,251 N.C. at 300, 111 S.E.2d at 327. Without evidence of current exposure to asbestos, the Commission cannot find that plaintiff has met the second element of his claim, entitling him to an order of removal, which when accomplished triggers the award of 104 weeks of benefits. See Austin,141 N.C. App. at 145; N.C. GEN. STAT. § 97-61.5(b).
Further, the Barber and Fetner cases were only in litigation due to the apparent inequity resulting from the strict application of § 97-57
designating liability on the last hazardous employment and did not arise from any disagreement concerning "current exposure." For example, liability must be placed on the last employer where the plaintiff has been exposed to the hazards of asbestos for as little as 30 days even when a prior employer may have hazardously exposed plaintiff to asbestos for more than twenty years. However, an employer who escapes liability in one case despite long exposure may be the last, short-term employer in the next case. Thus, taken from a broad view, the statute is equitable, and is consistent with the goal of the Legislature to promote judicial economy. See N.C. GEN. STAT. § 97-57.
 REMOVAL FROM HAZARDOUS WORK
Plaintiff has argued illogically that he is entitled to an order of removal because his current employment involves a hazardous exposure to asbestos, and incongruously, at the same time, contends that he does not have to be removed from his current employment. Plaintiff cannot have it both ways. If plaintiff is actually currently hazardously exposed to asbestos, we must order his actual removal from employment. See N.C. GEN. STAT. § 97-61.5(b). If he is not currently hazardously exposed to asbestos, he is not in an employment that requires removal. Id.; seeAustin, 141 N.C. App. at 145. Plaintiff is only entitled to 104 weeks of benefits if he is actually "removed from the industry" following a sufficient order of removal. See Austin, supra.
The question of current exposure to asbestos as a condition precedent to the award of 104 weeks of benefits was recently addressed by the Court of Appeals in Abernathy. See Abernathy v. Sandoz Chemical,151 N.C. App. 252, 565 S.E.2d 218 (2002). In Abernathy, the plaintiff was represented by the same firm who represents plaintiff in this case. The Court of Appeals' opinion notes that the parties agreed that the Commission's award of 104 weeks of benefits was in error when the employee had retired and thereby was not currently engaged in employment that exposed him to the hazards of asbestos. Despite this concession before the Court of Appeals, plaintiff's counsel has not abandoned this argument before the Industrial Commission in this case, and insists that employees who are retired, as well as those who are currently employed in positions where there is no evidence of current exposure to the hazards of asbestos (such as in the instant case), are entitled to removal and the 104 weeks of benefits. Further, plaintiff argues before the Commission that Austin does not require plaintiff to prove current exposure to the hazards of asbestos; however, Judge Greene's dissenting opinion, adopted by the Supreme Court, clearly states:
 "An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."
Austin, 141 N.C. App. at 415, 540 S.E.2d at 835. Judge Greene's statement is consistent with the express language of the Act requiring the Commission to order removal from "any occupation that exposes him to the hazards of asbestos". If the employee is not exposed to the hazards of asbestos, there is no hazardous employment from which to order the removal and the order of removal would be a legal nullity and, hence, could not trigger an award for 104 weeks of compensation.[3]
Further, plaintiff illogically argues that he does not need to be removed from his employment because, if he were to become subject to the hazards of asbestos, he could use respiratory equipment and avoid the exposure. If this argument is correct, there would be no need for an order of removal because employment under such circumstances would prevent hazardous exposure to asbestos.
Moreover, I disagree with the majority's interpretation of §97-61.5(b) because it ignores the express requirement that effectuates the underlying statutory purpose. An order of removal is conditioned on plaintiff currently occupying an "occupation that exposes him to the hazards of asbestos." See Abernathy, supra; Austin,141 N.C. App. at 415; Moore, 122 N.C. App. at 378; Roberts,61 N.C. App. at 710.
 INSUFFICIENT ORDER OF REMOVAL
The majority's order of removal ignores the statutory mandate that plaintiff prove current hazardous exposure prior to the Commission's ordering removal. Furthermore, the language of the order in effect concludes that plaintiff is not currently exposed as it allows plaintiff to remain in his employment and therefore is contrary to the intent of the statutory scheme:
 "The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff must be ordered removed from any occupational exposure to asbestos for the remainder of his employment." [Conclusion of Law No. 3]
 "Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b)" [Order of Removal]
Because this order of "removal" does not sufficiently, or actually, order plaintiff's removal from his employment with defendant, it does not satisfy the second condition for removal. Further, since the majority's order of "removal" is not in fact such an order, it does not trigger the award of 104 weeks of benefits. Austin, 141 N.C. App. at 415; Abernathy,supra; N.C. GEN. STAT. § 97-61.5(b) ("if the employee is removed from the industry the employer shall pay"); Moore v. Standard Mineral Co.,122 N.C. App. 375, 469 S.E.2d 594 (1996) (§ 97-61.5(b) applies to victims of occupational disease who are thereafter removed from the industry at the directive of the Commission).
 PLAINTIFF'S § 97-61.7 ARGUMENT IS MISPLACED
Plaintiff suggests that the waiver provision of § 97-61.7 allows an employee to continue in his employment and at the same time receive the 104 weeks of benefits pursuant to § 97-61.5. Although § 97-61.7, and cases interpreting this provision,[4] have allowed employees to obtain the 104 weeks of benefits under § 97-61.5, our courts have held that § 97-61.7 applies only after an employee has been ordered removed and awarded compensation under § 97-61.5. See Austin,141 N.C. App. at 416. Thus, § 97-61.7 does not remove plaintiff's burden to prove his entitlement to benefits under § 97-61.5(b). Plaintiff's argument that Sections 97-61.5 and 97-61.7 are to be read together was rejected by the Supreme Court in Austin that adopted the dissent of Judge Greene rather than the majority opinion of the Court of Appeals.
Moreover, in the instant claim, plaintiff has not sought a waiver from removal from the Commission. In addition, plaintiff has not presented evidence to the Commission on the issue of whether the Commission should approve a waiver of further benefits and allow plaintiff to continue in hazardous employment. Therefore, a § 97-61.7 question is not properly before the Commission.
 104 WEEKS NOT APPROPRIATE COMPENSATION FOR PLAINTIFF
Plaintiff also suggests that in order to provide compensation within the intent of the Act, the award of 104 weeks is necessary even though he will continue in his employment. Plaintiff's argument, however, fails to recognize that plaintiffs, who though they are not currently exposed to the hazards of asbestos and thus entitled to 104 weeks of benefits because of removal, are afforded relief for their diagnosed disease under other statutory provisions. In fact, pursuant to § 97-64, a disabled plaintiff is entitled to recover benefits under §§ 97-29, 97-30, or97-31. Abernathy, supra; Clark, 141 N.C. App. at 428-429; see Honeycuttv. Carolina Asbestos Co., 235 N.C. 471, 70 S.E.2d 426 (1952) (entitled to ordinary compensation under the general provisions of the Act). The fallacy of plaintiff's argument was explained in Clark:
 . . . defendants also contend that "most importantly, the payment of one hundred four weeks of compensation is reserved to those employees who are actually removed from their employment." (Emphasis added). This Court addressed the removal requirement in Moore v. Standard Mineral Co., 122 N.C. App. 375, 469 S.E.2d 594
(1996).
 [T]he term "removal" as used by G.S. § 97-61.5
presumed medical diagnosis will occur during the hazardous employment. Thus the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease are thereafter "removed" from hazardous industry by a directive of the Commission. However, the phrase is inapposite to instances as that sub justice wherein a claimant is diagnosed at some point subsequent to leaving hazardous employment.
Id. at 378, 469 S.E.2d at 596. . . . Clark 141 N.C. App. at 428-29. Although Moore and other decisions have questioned appropriate compensation for employees who are not entitled to removal, the Court, inClark, explained that the Act, as amended, expressly provides workers' compensation benefits for employees who suffer from the occupational disease of asbestosis:
 The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64
(1991), which provides:
 Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.
Clark 141 N.C. App. at 428-29; see Abernathy, supra. Thus, because the Act does in fact provide benefits to disabled plaintiffs with asbestosis who are not currently exposed to the hazards of asbestos and consequently are not entitled to 104 weeks of benefits, and because there is no sound policy reason to extend the application of § 97-61.5 beyond its express and intended purpose, there is no basis to award § 97-61.5(b) benefits in this case.
 BENEFITS ARE WEEKLY
The majority further errs in ordering that the 104 weeks of benefits pursuant to § 97-61.5(b) "be paid in a lump sum . . . without commutation." Section 97-61.5(b) expressly refers to "weekly compensation . . . which compensation shall continue for a period of 104 weeks." This provision does not provide for a lump sum payment. As explained, infra, § 97-61.5(b) benefits are intended to sustain the diseased employee who must leave his employment because it causes a current, hazardous exposure to asbestos during the two year, 104 week, period between the first panel examination and the third panel examination. Further, there would be no need for §97-61.6 to address the payment of "remaining portion of the 104 weeks specified in G.S. § 97-61.5" if these benefits were intended to be paid in a lump sum. Thus, § 97-61.5(b) appropriately provides for "weekly compensation," rather than payment of benefits in a lump sum.
 CONCLUSION
For the foregoing reasons, plaintiff's claim for 104 weeks of benefits pursuant to § 97-61.5(b) must be denied. Therefore, I must respectfully dissent from the majority's opinion affirming the Deputy Commissioner's Opinion and Award.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DCS/gas
[1] The only possible reasonable inference that can be drawn from the position of the plaintiff is that plaintiff's continued employment does not expose him to the hazards of asbestos. As discussed below, in the section entitled "Removal From Hazardous Work," plaintiff argues that he should be able to return to his employment and has requested, as the majority has ordered, that the order of removal not remove plaintiff from his current employment. If plaintiff's current employment is sufficiently safe to allow him to return to work, this employment cannot be inferred to be hazardous. The work either presents a current hazardous exposure for which an order of removal and preclusion from a return to work should be entered, or it does not present a current hazardous exposure and plaintiff's claim for § 97-61.5(b) benefits should be denied.
[2] The stipulation of the parties reads:
 "Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, plaintiff was exposed to asbestos for 30 days within a seven month period, as is required by N.C. Gen. Stat. § 97-57."
[3] Plaintiff also suggests that the stipulation of the parties also requires the Commission to enter an order of removal. The stipulation states: "The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-61.5(b)." This stipulation is contingent on a finding that "plaintiff be awarded compensation" and does not otherwise abrogate the requirements of the Commission to comply with § 97-61.5(b) of the Act.
[4] Section 97-61.7 provides that "[a]n employee who has been compensated" under § 97-61.5(b) as an alternative to forced change of occupation may, subject to approval of the Industrial Commission, waive further compensation and continue his employment. Plaintiff incorrectly relies on Bye v. Interstate Granite Company, 230 N.C. 334, 53 S.E.2d 274
(1949), which preexisted the current statutory provision for an order of removal, for the proposition that plaintiff may receive an order of removal and continue to maintain his employment. A careful reading of this case reveals that the Commission did not actually order plaintiff to be removed from his employment, but, advised plaintiff that he should seek new employment based on reports from his examining physician and based on plaintiff's age and long exposure and left the decision to leave his employment to plaintiff. Significantly, the Bye decision pre-dates the changes to the Act requiring the Commission to order removal, and in fact, no order of removal was entered by the Commission in that case, therefore, Bye does not support the proposition for which it is offered by plaintiff. Plaintiff also cites Roberts v. Southeastern Magnesia Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983) for the proposition that the Commission can order plaintiff to "refrain from exposing himself to the hazards of employment" and receive 104 weeks of benefits without leaving his employment. Contrary to the suggestion of plaintiff, however, the Roberts decision stands for the proposition that a plaintiff is entitled to compensation for his removal from employment exposing plaintiff to the hazards of asbestos as an incentive to force change in occupation, or provide a "safety net", without requiring plaintiff to prove an incapacity to earn wages due to his disease.61 N.C. App. at 709. In Roberts, there was no evidence that plaintiff continued to be exposed to asbestos after his removal was ordered. The critical evidence was that plaintiff was the president of defendant-employer, that he was daily exposed to asbestos before the order of removal, regardless of the fact that defendant-employer was phasing out its use of asbestos.
Plaintiff, and the majority opinion, also inappropriately relies onHoneycutt v. Carolina Asbestos Co., 235 N.C. 471, 70 S.E.2d 426 (1952).Honeycutt is not a § 97-61.5(b) case, and predates the current statutory removal provisions. In Honeycutt, plaintiff was diagnosed with asbestosis at which time his dusty trades card was revoked and the recommendation was made for plaintiff to obtain new employment. Plaintiff found new employment as a police officer where he earned greater wages. The issue was whether plaintiff had "disability" because he had no loss of wage earning capacity. The Supreme Court explained the difference between "disablement" applicable to asbestosis and silicosis cases and "disability" for all other injuries/diseases and held that "disablement" under § 97-54 is not the same as "disability" under § 97-2. The Supreme Court explained that for asbestosis/silicosis cases "disablement" means "the event of becoming actually incapacitated from performing normal labor in the last occupation in which [plaintiff was] remuneratively employed." In Honeycutt the Supreme Court did not approve benefits under §§ 97-61.5(b) or 97-61.7 and did not mention an order of removal or 104 weeks, as this decision predates the statutory removal provisions. Rather, the Supreme Court held that plaintiff "would be entitled to ordinary compensation under the general provisions of our Workmen's Compensation Act. G.S. § 97-61; Young v. Whitehall Co.,229 N.C. 360, 49 S.E.2d 797" (1948).