While plaintiff has contracted the occupational disease of asbestosis, I must respectfully dissent from the majority decision to order removal and pay 104 weeks of benefits pursuant to N.C. GEN. STAT § 97-61.5(b). Contrary to the express language of the statute, the majority finds that an order of removal and the award of 104 weeks of benefits are warranted based solely on one fact alone: that plaintiff has asbestosis. This, however, is not the law.
 NECESSARY ELEMENTS FOR ORDER OF REMOVAL/104 WEEKS
Removal from employment under § 97-61.5 requires a finding of at least two conditions: (1) that the plaintiff has a compensable claim for asbestosis; and (2) that plaintiff is currently employed (at the time of the "hearing after first [panel] examination") in a position that causes harmful exposure to asbestos. See Austin v. Continental General Tire,141 N.C. App. 397, 415, 540 S.E.2d 824, 835 (2000) (J. Greene, dissenting), reversed and adopting dissenting opinion, 354 N.C. 334,553 S.E.2d 680 (2001); Moore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996). On the issue of removal, §97-61.5(b) specifically provides:
 "If the Industrial Commission finds at the first hearing that the employee has asbestosis or if the parties enter into an agreement to the fact that the employee has asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis"
[Emphasis added] Plaintiff has met the first condition for removal through the agreement of the parties and the evidence that he has asbestosis. Plaintiff, however, has not met the second condition, and indeed has presented no evidence to prove that his occupation currently
"exposes him to the hazards of asbestosis." Moreover, the evidence is that plaintiff retired from his employment with defendant on 1 December 1998. No reason for his retirement is presented in the evidence. Thus, plaintiff has not established that he is entitled to an order of removal. Further, only an appropriate order of removal, that actually removes plaintiff from his employment in the industry, triggers the payment of 104 weeks of benefits. See Clark v. ITT Grinnell, 141 N.C. App. 417,539 S.E.2d 369, remanded for reconsideration, 354 N.C. 572, 558 S.E.2d 867
(2002); Austin, 141 N.C. App. at 415; Moore, supra (removal from industry by directive of Commission); N.C. GEN. STAT. § 97-61.5(b) (if employee is removed from industry).
The application of the statutory provision regarding removal and subsequent payment of 104 weeks has a practical purpose and historical significance. By way of an explanation, employees in a dusty trade are entitled to a dusty trade card only after passing a chest x-ray examination, and for as long as their yearly chest x-rays remain clear. Upon a finding of asbestosis after clinical examination (the first panel examination), the employee's dusty trade card is revoked, prohibiting his continued employment in the dusty trade industry. The diagnosis of asbestosis and evidence of current hazardous exposure to asbestos thereby trigger an order of removal and the second and third panel examinations during which time the 104 weeks of benefits is paid. The length of the 104-week period is significant in the statutory scheme of the panel examinations. A 52-week period exists between the first and second panel examinations and another 52-week period exists between the second and third panel examinations. This accounts for the 104 weeks of benefits which are provided as a "safety net" for an employee who is suddenly prohibited from further employment in the dusty trade industry where the employee is currently hazardously exposed and whose final disability determination will not be made until after the third panel examination. Although § 97-61.5 has now been extended by the courts to non-dusty trade employment, the same principles apply. The 104 weeks of benefits is intended to compensate the employee who suddenly is prohibited from continuing in his current employment because it exposes him to the hazards of asbestos. Thus, evidence of plaintiff's current exposure to the hazards of asbestos is a critical element to be established prior to an order of removal and payment of 104 weeks of benefits.
Plaintiff has the burden of proof on the issue of current exposure to the hazards of asbestos. While plaintiff is not required to provide scientific proof of his current exposure to asbestos for purposes of § 97-61.5(b), nevertheless he must prove current exposure by the greater weight of the competent evidence. See Austin, 141 N.C. App. at 404. The Austin Court did not hold, as plaintiff suggests in this case, that plaintiff is entitled to removal without establishing that he iscurrently exposed to the hazards of asbestos. Further, § 97-61.5(b) compels removal from "hazardous exposure" to asbestos, not merely because a facility may have asbestos present, but because asbestos is present in such a form as it can be inhaled, i.e. friable. Asbestos that is non-friable, encapsulated, or in other form such that it would not be inhaled and therefore not cause or contribute to asbestosis is not, while in that form, a "hazardous" exposure. Thus, plaintiff must present evidence that there is asbestos in the facility that currently presents a hazardous exposure to him while working. See Austin,141 N.C. App. at 415.
Plaintiff has not presented any evidence that his employment with defendant currently exposes him to the hazards of asbestos. Although plaintiff testified as to exposure to asbestos in his employment with defendant, he did not testify as to when he was exposed (i.e.: was the exposure continuing), and moreover, the undisputed evidence is that plaintiff retired on 1 December 1998, more than three years before the "hearing after first examination."[1] Thus, there is no evidence that plaintiff is currently employed with defendant, let alone that the employment is currently hazardous. The majority finds in Finding of Fact No. 4, "[t]hroughout his employment, plaintiff was exposed to asbestos at various places throughout the plant on a regular basis." However, there is no evidence, stipulation, or reasonable inference to support the finding that plaintiff is currently, hazardously exposed to asbestos in employment with defendant, let alone when he last worked in December 1998. The majority correctly finds in Finding of Fact No. 3 that plaintiff was last employed on 1 December 1998. The parties also stipulated that plaintiff was last injuriously exposed (30 work days inside of seven consecutive months) to asbestos while employed by defendant. This finding and stipulation taken together, however, do not support the majority's finding and conclusion that plaintiff was hazardously exposed "throughout his employment," or more significantly, at the present time is hazardously exposed in his employment with by defendant. The stipulation does not define when during the thirty-some years of employment plaintiff was last exposed to the hazards of asbestos, and more significantly, does not state whether plaintiff iscurrently exposed to the hazards of asbestos. Thus, there is no evidence to support an essential element of plaintiff's claim under §97-61.5(b).
 PLAINTIFF'S § 97-57 ARGUMENT IS MISPLACED
Rather than presenting evidence of current exposure to the hazards of asbestos in his employment, plaintiff suggests that the stipulation, made pursuant to § 97-57, that plaintiff was exposed to asbestos for 30 days within a seven-month period,[2] presents an irrebuttable presumption that plaintiff was exposed to asbestos in the last 30 days of his employment. Plaintiff's reliance on § 97-57 to determine current
exposure is misplaced because § 97-57 is not applicable for determining current exposure. Section 97-57 determines liability for "last injurious exposure" when there is a series of defendants, all of whom are potentially liable because their employment caused plaintiff to be exposed to the hazards of asbestos. Defendant's stipulation to "last injurious exposure" merely indicates that, should plaintiff successfully establish a compensable claim for § 97-61.5(b) benefits, then defendant is the liable employer. Section 97-57 does not abrogate plaintiff's burden to prove the elements of his case, including but not limited to, the elements for removal and the award of 104 weeks under § 97-61.5(b).
Plaintiff's argument arises from a misinterpretation of the Court of Appeals' decision in Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991) and the North Carolina Supreme Court's decision in Fetner v. Rocky Mount Marble Granite Works,251 N.C. 296, 111 S.E.2d 324 (1959). Both of these cases deal with the issue of "last injurious exposure" for purposes of determining the particular defendant liable for benefits. Plaintiff misapplies § 97-57
to abrogate plaintiff's burden of proof with regard to current exposure when § 97-57 is only applicable after plaintiff has carried all of the threshold burdens of proof for compensability of his disease. Section97-57, in and of itself, does not remove plaintiff's burden to prove a necessary element of his § 97-61.5(b) claim; i.e.: current exposure to the hazards of asbestos. Furthermore, as these cases dealt with dusty trade defendants whose facilities continued to cause current exposure, whether there was "current exposure" was not an issue in controversy and therefore not a litigated issue in these cases.
Plaintiff has misinterpreted the Barber decision. Plaintiff, out of context, quotes Barber to find that § 97-57 "creates an irrebuttable legal presumption that the last 30 days of work is a period of last injurious exposure." See Barber 101 N.C. App. at 565. The issue inBarber was whether plaintiff who was only employed for forty-eight days at the second of two employers nevertheless had to establish that his exposure to asbestos was "injurious." The Court of Appeals correctly applied § 97-57 and explained "[i]n light of the irrebuttable legal presumption that the last thirty days of work subjecting the plaintiff to the hazards of asbestos is the period of last injurious exposure and the Commission's holding that plaintiff was exposed to the inhalation during the forty-eight days he worked for the defendant, such exposure must be deemed injurious." Id. at 566 [emphasis added]. However, contrary to plaintiff's argument in the instant case, the Court of Appeals in Barber
did not find that a plaintiff did not have to establish current exposure to asbestos for purposes of removal; rather, the Court of Appeals explained that the plaintiff did not have to prove that his exposure to asbestos was "injurious" because § 97-57 creates a presumption that 30 days of exposure within seven months is "injurious." Id. at 566. Further, the Court in Barber did not find evidence of exposure in the last 30 days of employment based on a presumption. In fact, the Barber
court had evidence of record to determine that plaintiff was exposed to asbestos during the forty-eight days that he worked for defendant. Id.
Similarly, the Supreme Court's decision in Fetner does not support plaintiff's argument that a stipulation of "last injurious exposure" is equivalent to a stipulation of current exposure. See Fetner v. RockyMount Marble Granite Works, 251 N.C. 296, 111 S.E.2d 324 (1959). InFetner, a dusty trades case, the issue was whether the exposure with a third employer for whom plaintiff only worked for eleven months was "injurious" when plaintiff was diagnosed with silicosis before he went to work for the third employer. In this case, plaintiff was diagnosed with silicosis on March 4, 1949, when he was working for the first employer, and his dusty trade card was revoked after his diagnosis. On August 10, 1950, plaintiff requested permission from the Industrial Commission to waive compensation and to go to work for the second employer. Plaintiff worked for the second employer from July 26, 1950 to October 19, 1950. Plaintiff then went to work for a third employer from November 4, 1950 to September 29, 1951. No waiver of compensation was sought for plaintiff's employment with the third employer, thereby raising the issue of whether the eleven-month employment with the third employer was "injurious" in light of the prior diagnosis of silicosis and prior revocation of plaintiff's dusty trade card based on that diagnosis. In examining the liability of the third employer, the Supreme Court held that the Commission may not arbitrarily select any thirty-day period of employment, but must select the last 30 days within a seven-month period during which the plaintiff was last exposed, as the period of "last injurious exposure." Fetner, 251 N.C. at 301. Moreover, the Supreme Court did not relieve plaintiff of the burden to present evidence on the period of hazardous exposure. Id. Competent evidence was presented and findings were made to determine when plaintiff was last exposed to the hazards of silica.
Contrary to the suggestion of plaintiff, the Fetner and Barber
decisions do not abrogate the requirement of plaintiff to establish by the greater weight of the competent evidence the period of hazardous exposure. Rather, these decisions hold that § 97-57 creates for purposes of liability among two or more defendants, where plaintiff proved hazardous exposure, an irrebuttable presumption that exposure for at least 30 days during a seven-month period is an "injurious exposure." In light of the stipulation of the parties and the lack of evidence of other hazardous employment, this issue is not present in this case; the defendant has stipulated that plaintiff's "injurious exposure" occurred during his employment with defendant.
Further, the plaintiff's illogical argument that the last thirty days of employment was injurious, without producing evidence of exposure to any asbestos during this thirty-day period, directly violates the Supreme Court's holding in Fetner that the Commission may "not arbitrarily select any thirty days of employment." Fetner, 251 N.C. at 300,111 S.E.2d at 327. The relevant period under § 97-57 is the "last thirty days of employment while exposed to silica [asbestos] dust." Fetner,251 N.C. at 300, 111 S.E.2d at 327. Without evidence of current exposure to asbestos, the Commission cannot find that plaintiff has met the second element of his claim, entitling him to an order of removal, which when accomplished triggers the award of 104 weeks of benefits. See Austin,141 N.C. App. at 145; N.C. GEN. STAT. § 97-61.5(b).
Further, the Barber and Fetner cases were only in litigation due to the apparent inequity resulting from the strict application of § 97-57
designating liability on the last hazardous employment and did not arise from any disagreement concerning "current exposure." For example, liability must be placed on the last employer where the plaintiff has been exposed to the hazards of asbestos for as little as 30 days even when a prior employer may have hazardously exposed plaintiff to asbestos for more than twenty years. However, an employer who escapes liability in one case despite long exposure may be the last, short-term employer in the next case. Thus, taken from a broad view, the statute is equitable, and is consistent with the goal of the Legislature to promote judicial economy. See N.C. GEN. STAT. § 97-57.
 REMOVAL FROM HAZARDOUS WORK
Plaintiff has argued illogically that he is entitled to an order of removal because his employment[3] involves a hazardous exposure to asbestos. The evidence, however, is undisputed that plaintiff is notcurrently employed with defendant, or anyone else; therefore, there is no foundation to order his removal. If plaintiff is currently hazardously exposed to asbestos, we must order his actual removal from employment.See N.C. GEN. STAT. § 97-61.5(b). If he is not currently hazardously exposed to asbestos, he is not in an employment that requires removal.Id.; see Austin, 141 N.C. App. at 145. Plaintiff is only entitled to 104 weeks of benefits if he is actually "removed from the industry" following a sufficient order of removal. See Austin, supra; N.C. GEN STAT. § 07-61.5(b).
The question of current exposure to asbestos as a condition precedent to the award of 104 weeks of benefits was recently addressed by the Court of Appeals in Abernathy. See Abernathy v. Sandoz Chemical,151 N.C. App. 252, 565 S.E.2d 218, review denied, 356 N.C. 432,572 S.E.2d 421 (2002). In Abernathy, the plaintiff was represented by the same firm who represents plaintiff in this case. The Court of Appeals' opinion notes that the parties agreed that the Commission's award of 104 weeks of benefits was in error when the employee had retired and thereby was not currently engaged in employment that exposed him to the hazards of asbestos. Despite this concession before the Court of Appeals, plaintiff's counsel has not abandoned this argument before the Industrial Commission in this case, and insists that employees who are retired (such as the instant case), as well as those who are currently employed in positions where there is no evidence of current exposure to the hazards of asbestos, are entitled to removal and the 104 weeks of benefits. Further, plaintiff argues before the Commission that Austin does not require plaintiff to prove current exposure to the hazards of asbestos; however, Judge Greene's dissenting opinion, adopted by the Supreme Court, clearly states:
 "An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."
Austin, 141 N.C. App. at 415, 540 S.E.2d at 835. Judge Greene's statement is consistent with the express language of the Act requiring the Commission to order removal from "any occupation that exposes him to the hazards of asbestos". If the employee is not exposed to the hazards of asbestos, there is no hazardous employment from which to order the removal and the order of removal would be a legal nullity and, hence, could not trigger an award for 104 weeks of compensation.[4]
Plaintiff further argues that he should be entitled to § 97-61.5(b) benefits because he retired in 1998 after his 1997 diagnosis of asbestosis. The reason for plaintiff's retirement, and more importantly whether it was because of this illness, however, is not in evidence.[5]
Also, plaintiff has not requested to reopen the record or otherwise provide the Full Commission with evidence as to the reason for his retirement. Moreover, plaintiff's first panel examination did not occur until January 1999, after he had already retired from his employment. Section 97-61.5(b) specifically addresses removal after the first panel examination, and the evidence is undisputed that plaintiff retired before this examination; therefore, the removal provision of § 97-61.5(b) is not applicable to this case. See Austin, 540 S.E.2d at 835 ("An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."); Clark, 539 S.E.2d at 376
(removal from hazardous industry by directive of Commission).
Although plaintiff correctly notes that the plaintiffs in Abernathy andAustin retired before they were diagnosed with asbestos, this distinction should not cause a different result to occur.[6] First, this argument ignores that portion of Judge Greene's opinion wherein he stated:
 "Sections 97-61.1 through 61.7 were enacted `to encourage employees to remove themselves from hazardous exposure to asbestos and to provide for employee rehabilitation.' [citation omitted] An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."
Austin, 540 S.E.2d at 835 [Emphasis added]. Moreover, the statutory mandate is for the Commission to determine "removal" and the award of 104 weeks of benefits at the "first hearing" after the panel examination. N.C. GEN. STAT. § 97-61.5. If plaintiff, as in this case, is not employed in a position that causes harmful exposure at the time the Full Commission hold the "hearing after first [panel] examination" the removal and benefit provisions of § 97-61.5(b) are not applicable. SeeAbernathy, 565 S.E.2d at 257; Austin, 540 S.E.2d at 835-36; N.C. GEN. STAT. § 97-61.5. The benefits are for removal from "hazardous industry by a directive of the Commission." Clark, 539 S.E.2d at 376,citing, Moore, 469 S.E.2d at 596.
Saliently, I believe that plaintiff has failed to satisfy the requirements for removal from hazardous employment, and the award of 104 weeks of benefits, for at least four reasons: (1) plaintiff is not employed; (2) plaintiff has failed to establish that his employment presents a current hazard; (3) there is no evidence before the Commission that plaintiff's retirement was because of his disease; and (4) plaintiff was not removed from his employment at the directive of the Commission. Therefore, I find that plaintiff has not established entitlement to § 97-61.5(b) benefits; however, consistent with Abernathy, plaintiff is entitled to a hearing to establish whether he is entitled to benefits pursuant to §§ 97-29, 97-30, or 97-31. See Clark, 539 S.E.2d at 376; N.C. GEN. STAT. § 97-64.
 INSUFFICIENT ORDER OF REMOVAL
To trigger the award of 104 weeks of benefits the order of removal must cause plaintiff to be removed from the industry. In Moore, the Supreme Court stated:
 "the language regarding `removal from the industry' has specific application only to occasions when identified victims of occupational disease are thereafter `removed' from a hazardous industry by directive of the Commission."
Clark, 539 S.E.2d at 376, citing, Moore, 469 S.E.2d at 596. The majority's order of removal ignores the statutory mandate that plaintiff is to be actually removed from his employment with defendant.[7] At best, this order of removal appears to be a legal nullity because there is no evidence that plaintiff is employed at all, let alone in an occupation which further exposes him to the hazards of asbestos. Moreover, since the majority's order of "removal" does not, and did not, in fact, remove plaintiff from his employment, let alone the industry, as plaintiff left employment before the directive of the Commission, the order of removal does not trigger the award of 104 weeks of benefits.Moore, 469 S.E.2d at 596; Austin, 141 N.C. App. at 415; Abernathy,supra; N.C. GEN. STAT. § 97-61.5(b).
 104 WEEKS NOT APPROPRIATE COMPENSATION FOR PLAINTIFF
Plaintiff also suggests that in order to provide compensation within the intent of the Act, the award of 104 weeks is necessary. Plaintiff's argument, however, fails to recognize that plaintiffs, who though they are not currently exposed to the hazards of asbestos and thus entitled to 104 weeks of benefits because of removal, are afforded relief for their diagnosed disease under other statutory provisions. In fact, pursuant to § 97-64, a disabled plaintiff is entitled to recover benefits under §§ 97-29, 97-30, or 97-31. Abernathy, supra; Clark,141 N.C. App. at 428-429; see Honeycutt v. Carolina Asbestos Co.,235 N.C. 471, 70 S.E.2d 426 (1952) (entitled to ordinary compensation under the general provisions of the Act). The fallacy of plaintiff's argument was explained in Clark:
 . . . defendants also contend that "most importantly, the payment of one hundred four weeks of compensation is reserved to those employees who are actually removed from their employment." (Emphasis added). This Court addressed the removal requirement in Moore v. Standard Mineral Co., 122 N.C. App. 375, 469 S.E.2d 594
(1996).
 [T]he term "removal" as used by G.S. § 97-61.5
presumed medical diagnosis will occur during the hazardous employment. Thus the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease are thereafter "removed" from hazardous industry by a directive of the Commission. However, the phrase is inapposite to instances as that sub justice wherein a claimant is diagnosed at some point subsequent to leaving hazardous employment.
Id. at 378, 469 S.E.2d at 596. . . . Clark 141 N.C. App. at 428-29. Although Moore and other decisions[8] have questioned appropriate compensation for employees who are not entitled to removal, the Court, inClark, explained that the Act, as amended, expressly provides workers' compensation benefits for employees who suffer from the occupational disease of asbestosis:
 The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64
(1991), which provides:
 Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.
Clark 141 N.C. App. at 428-29; see Abernathy, supra. Thus, because the Act does in fact provide benefits to disabled plaintiffs with asbestosis who are not currently exposed to the hazards of asbestos and consequently are not entitled to 104 weeks of benefits, and because there is no sound policy reason to extend the application of § 97-61.5 beyond its express and intended purpose, there is no basis to award § 97-61.5(b) benefits in this case.
In Comstock v. Weyhaeuser Company, I.C. No. 931412, filed on February 3, 2003, the same Commissioners composing the majority in this case, denied plaintiff's claim for § 97-61.5(b) benefits because "a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire,354 N.C. 344, 553 S.E.2d 680 (2001)." [COL 4 in I.C. No. 931412.] The circumstances are no different in this case, and thereby, the results should be the same.
 § 97-88.1 ATTORNEY'S FEES
Finally, the majority opinion finds that plaintiff's claim for attorney's fees for unfounded litigiousness pursuant to § 97-88.1
"should be reserved for a subsequent determination at the final hearing" or "held in abeyance." [Finding of Fact No. 23; Conclusion of Law No. 10] If a ruling on this issue cannot be made at this time, then clearly there are and will be no grounds to assess attorney's fees. If it cannot be determined that the defense is unreasonable, then in fact the defense is patently reasonable as reasonableness is not determined in hindsight. Further, as noted above, this case includes numerous legal issues on which the parties, including defendant, have a right to a ruling by the Commission and subsequently by the Courts. Thus, plaintiff's claim for attorney's fees pursuant to § 97-88.1 must be denied. See Shaw v.United Parcel Service, 116 N.C. App. 598, 449 S.E.2d 50 (1994), aff'd perCuriam, 342 N.C. 189, 463 S.E.2d 78 (1995).
 CONCLUSION
For the foregoing reasons, plaintiff's claim for 104 weeks of benefits pursuant to § 97-61.5(b) must be denied. Therefore, I must respectfully dissent from the majority's opinion affirming the Deputy Commissioner's Opinion and Award.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DCS/gas
[1] The "first hearing" expressed in § 97-61.5
occurred on 13 March 2002.
[2] The stipulation of the parties reads:
 "Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, plaintiff was exposed to asbestos for 30 days within a seven month period, as is required by N.C. Gen. Stat. § 97-57."
[3] As explained above, and as found in the majority's Finding of Fact Nos. 3 and 20, plaintiff retired in December 1998 and there is insufficient evidence in the record to determine the reason for retirement. Thus, there is no "employment" from which to remove plaintiff at the time of the "hearing after first examination" to trigger the potential application of § 97-61.5(b). "An employee who is no longer employed in a position that causes [allegedly] harmful exposure need not be `removed' from his employment." Austin, 141 N.C. App. at 415,540 S.E.2d at 835.
[4] Plaintiff also suggests that the stipulation of the parties also requires the Commission to enter an order of removal. The stipulation states: "The parties agreed further that should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b) the Deputy Commissioner may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-61.5(b)." This stipulation is contingent on a finding that "plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b)" and does not otherwise abrogate the requirements of the Commission to comply with § 97-61.5(b) of the Act.
[5] Even the majority finds that "[t]here is insufficient evidence at this time to determine whether plaintiff's decision to retire was based on his own desire to remove himself from further exposure to asbestos which could constitute a `constructive removal' from the hazards of asbestos. See Finding of Fact No. 20. Although plaintiff testified at the deputy commissioner hearing, he did not testify about the extent of his disease, how it effected his ability to work, or other factors which could be relevant to the reason for his retirement. Plaintiff was 59 years of age and had worked for defendant for more than 33 years at the time of his retirement in December 1998.
[6] In Abernathy, the Court of Appeals correctly quoted Judge Greene's opinion in Austin to hold that:
 "An employee who is no longer employed at the time he is diagnosed with asbestosis, therefore, may not, under the plain language of section 97-61.5(b) proceed with a workers' compensation claim under this statute."
See Abernathy, 565 S.E.2d at 257, quoting, Austin,540 S.E.2d at 835.
[7] The prerequisites for the order of removal are:
diagnosis of asbestosis or silicosis; and,
 current employment that exposes plaintiff to the hazards of asbestosis or silicosis.
 N.C. GEN. STAT. § 97-61.5(b). The award of 104 weeks of benefits requires that plaintiff additionally prove a third element:
 that the employee is removed from the industry at the directive of the Commission.
Id.; Moore, 469 S.E.2d at 596; Clark, 539 S.E.2d at 376.
[8] Even, Judge Greene, in Austin, wrote:
 "I acknowledge the `removal' requirement of section 97-61.5(b) raises concerns regarding whether an employee who chooses to remove himself from employment prior to diagnosis of asbestos should be precluded from receiving 104 weeks of compensation under section 97-61.5(b). For example, this statute may encourage employees who are exposed to asbestos to remain in their employment until they receive a diagnosis of asbestosis. These concerns, however, should not be resolved by this Court; rather, the proper forum for addressing these concerns is in the Legislature."
Austin, 540 S.E.2d at 836. This inquiry, however, does not remove the requirement explained by the Supreme Court that the removal from hazardous employment must occur at the "directive of the Commission."Moore, 569 S.E.2d at 596.